**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| TITLECRAFT, INC., | |
|     Plaintiff and<br>    Counterclaim Defendant, | No. 0:10-cv-00758-RHK-JJK |
| v. | **MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| NATIONAL FOOTBALL LEAGUE and<br>NFL PROPERTIES, LLC, | |
|     Defendants and<br>    Counterclaim Plaintiffs. | |

---

## INTRODUCTION

This is a case of copyright infringement with very few material facts, none of which are in dispute: The NFL owns a valid copyright registration for an original sculpture that has become an American icon—the Vince Lombardi Trophy.



*Figure 1. The NFL's Vince Lombardi Trophy*
**(Declaration of Daniel J. Connolly Ex. A.)**

Titlecraft is in the business of selling trophies to fantasy football players. Without authorization from the NFL, Titlecraft commenced manufacture and sale of knockoffs that are copied from and substantially similar to the Vince Lombardi Trophy. Notwithstanding the NFL's numerous requests that Titlecraft cease its infringing acts, Titlecraft continues to sell the knockoff fantasy football trophies.



*Figure 2. Some of Titlecraft's Infringing Trophies from its Website*
(*See* **Connolly Decl. Ex. B.**)

A significant part of this dispute can be resolved quickly and without the time and expense of discovery. For the reasons explained below, the National Football League and NFL Properties LLC (the "NFL Parties") are entitled to summary judgment on their counterclaim for copyright infringement (Count I).

Both Titlecraft and the NFL Parties are interested "in prompt resolution of this controversy." (Complaint (Docket No. 1) ¶ 27.) Summary judgment on the copyright claim furthers this interest because, as a practical matter, it can dispose of the entire case. Should the Court conclude that Titlecraft has infringed the NFL's copyright rights in the Vince Lombardi Trophy design, Titlecraft will be

2

required to stop selling its infringing trophies. That will end the conduct that gave rise to this litigation.

## UNDISPUTED FACTS

**A.    The Vince Lombardi Trophy.**

The NFL commissioned the Vince Lombardi Trophy from Tiffany & Co. ("Tiffany") in 1966 and owns a valid and subsisting registered copyright for this singular trophy. (*See* Connolly Decl. Ex. C.) In the following decades, NFL football evolved into the most popular professional sport in America. At the end of each NFL season, two NFL teams compete in the Super Bowl game for the NFL championship. For more than 40 years, the NFL has presented the Super Bowl winner with the Vince Lombardi Trophy.

The Super Bowl—and the ceremonial presentation of the Vince Lombardi Trophy—is broadcast around the world to millions of football fans. The Vince Lombardi Trophy is among the most famous and recognizable trophies in all of sports. Images of the trophy are widespread and readily accessible—a cursory Google search for "Vince Lombardi Trophy" returns hundreds of images of the trophy. (*See* Connolly Decl. Ex. D.)

**B.    Titlecraft's Infringing Conduct.**

Titlecraft sells multiple models of its fantasy football trophies at www.theultimatetrophy.com (*See* Complaint ¶¶ 15-16). Each is virtually identical

to the Vince Lombardi Trophy.  (*See*, *e.g.,* Figure 2 above; *see also* Connolly Decl. Ex. B (website photographs of Titlecraft fantasy football trophies).)

Titlecraft knew of the NFL's rights in the Vince Lombardi Trophy prior to commencing sales of the infringing trophies.  It had counsel opine on "the rights held by the National Football League relating to the Lombardi Trophy" and whether Titlecraft would have a "valid defense" if Titlecraft were sued by the NFL because of the obvious "*similarities* between the Lombardi trophy" and Titlecraft's products.[1]  (*See* Connolly Decl. Ex. E (emphasis added).)

### C.   The NFL Parties' Efforts To Resolve The Dispute.

The NFL Parties learned of Titlecraft's infringing trophies in August 2009 and promptly sent a letter to Titlecraft requesting that it cease their further manufacture or sale.  (Connolly Decl. Ex. F.)  Titlecraft admitted that its trophies "mimic the Vince Lombardi Trophy Design" but claimed they were "amusing wooden parod[ies] of the Lombardi Trophy."  (*Id*.)  Subsequently, the NFL Parties exchanged several rounds of correspondence with Titlecraft insisting that Titlecraft must stop its infringing conduct while urging resolution of the dispute short of litigation.  (*Id.* Ex. G. )  Titlecraft ignored the NFL Parties' repeated

---

[1]  This opinion is no defense to infringement.  The existence of an opinion of counsel is relevant only to the question of willfulness.  *See RCA/Ariola Int'l, Inc. v. Thomas & Grayston Co.*, 845 F.2d 773, 779 (8th Cir. 1988) (opinion letter was relevant to question of willfulness, not liability).  If necessary, willfulness can be addressed later in this litigation, in connection with the damages assessment.

4

requests, persisted with its manufacture and sale of infringing trophies, and commenced this suit on March 11, 2010, seeking a declaration that Titlecraft's fantasy football trophies do not "violate any rights of Defendant." (Complaint ¶ 29; *see also id.* ¶¶ 25, 28.)[2]

### D.   Procedural Posture.

The NFL Parties filed a timely answer in response to Titlecraft's Complaint, denying its allegations and asserting counterclaims. (*See* Docket No. 3.) Titlecraft did not reply or otherwise respond to the NFL Parties' counterclaims until the NFL filed a motion for default judgment, two weeks after Titlecraft's answer was due. (*See* Docket No. 11.)

The parties held a joint pretrial conference pursuant to Fed. R. Civ. P. 16 with Magistrate Judge Keyes on August 17, 2010. At the conference, the NFL Parties disclosed their intent to promptly file a dispositive motion based on the "substantial similarity" of the Titlecraft fantasy football trophies and the Vince Lombardi Trophy. The Court directed Titlecraft "not to let discovery linger," and to serve promptly any discovery it felt was necessary to defend against such an early dispositive motion.

---

[2]  Because, as noted above, summary judgment on the copyright issue effectively will dispose of liability, the NFL Parties are not moving for summary judgment on the trademark issue at this time.

Nonetheless, Titlecraft waited more than six weeks to serve its discovery requests, during which time the NFL Parties held their motion in abeyance. When Titlecraft finally served its requests on October 1, 2010, it was instantly clear that not a single one relates in any way to the bases for summary judgment on the copyright claim. (Connolly Decl. ¶ 9, Ex. H.)

## LEGAL STANDARDS.

### A.   Summary Judgment.

Summary judgment is appropriate "if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Schoolhouse, Inc. v. Anderson*, 275 F.3d 726, 728 (8th Cir. 2002). If "the moving party satisfies its burden," the non-moving party must "respond by submitting evidentiary materials that designate 'specific facts showing that there is a genuine issue for trial.'" *Hoch v. Mastercard Int'l Inc.*, 284 F. Supp. 2d 1217, 1220 (D. Minn. 2003) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### B.   Copyright Infringement.

"Two elements are required to establish copyright infringement, [1] ownership of a valid copyright and [2] copying of the original elements of the work." *Mulcahy v. Cheetah Learning LLC*, 386 F.3d 849, 852 (8th Cir. 2004)

(citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)); *see Bar-Meir v. North American Diecast Ass'n MN Chapter 16*, 176 F. Supp. 2d 944, 947 (D. Minn. 2001) (Kyle, J.), *aff'd* 53 Fed. Appx. 396 (8th Cir. 2002), (copyright infringement requires ownership and copying of "constituent elements of the work that are original").

"In a copyright infringement case, where both works are in the record, a trial court has sufficient evidence to enter summary judgment." *Schoolhouse*, 275 F.3d at 728; *Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, 120 (8th Cir. 1987); *Nelson v. PRN Prods., Inc.,* 873 F.2d 1141, 1143 (8th Cir.1989). Even where (unlike this case) direct proof of copying is not in the record, a work that is "substantially similar" to another copyrighted work is deemed to have been copied. *See Hartman*, 833 F.2d at 120. Determinations of substantial similarity are made by the court based on a side-by-side comparison of the works. *See, e.g., CSM Investors, Inc. v. Everest Dev. Ltd.*, 840 F. Supp. 1304, 131 (D. Minn. 1994) (partial summary judgment granted, plans are substantially similar); *Knickerbocker Toy Co., Inc. v. Genie Toys Inc.*, 491 F. Supp. 526, 529 (E.D. Mo. 1980) (summary judgment on liability granted, toy dogs are substantially similar); *United States v. Washington Mint, LLC*, Civ. No. 99-1768, 2001 WL 1640073, at *4 (D. Minn. 2001) (partial summary judgment granted, coin design substantially similar to copyrighted sculpture).

## **ARGUMENT**

### C.     **The NFL Owns A Valid Copyright.**

The NFL owns a valid copyright, registered with the Copyright Office, for the Vince Lombardi Trophy.[3] (*See* Connolly Decl. Ex. C.)  Under the Copyright Act, a copyright registration constitutes "prima facie evidence of the validity of the copyright."  17 U.S.C. § 410(c); *Taylor Corp. v. Four Seasons Greetings, LLC*, 315 F.3d 1039, 1042 (8th Cir. 2003).

### D.     **Titlecraft Copied The Vince Lombardi Trophy.**

The undisputed record includes not only circumstantial evidence of copying based on access and substantial similarity, but also direct evidence of copying.

#### 1.     **Titlecraft Admitted It Copied.**

"Direct evidence of copying is rarely available," *Rottlund Co., Inc. v. Pinnacle Corp.*, 452 F.3d 726, 732 (8th Cir. 2006), but this is one of those rare instances.  In responding to the NFL Parties, Titlecraft admitted to "mimic[king]" the Vince Lombardi Trophy (Connolly Decl. Ex. F).

---

[3] The certificate of registration was first issued in 1970 to Tiffany & Co., the author of the original sculpture commissioned by the NFL.  (*See* Connolly Decl. Ex. C.)  Tiffany executed a written assignment of its copyright ownership to the NFL.  (*See* Connolly Decl. Ex. J.)

### 2.    Circumstantial Evidence Confirms Titlecraft Copied.

Even absent this admission, circumstantial evidence confirms that Titlecraft copied the Vince Lombardi Trophy. Copying is established by circumstantial evidence where the defendant "[1] had access to the copyrighted material and [2] the two works are "substantially similar." *Taylor*, 315 F.3d at 1042. *See Bar-Meir*, 176 F. Supp. 2d at 947 (copying established by inference through "circumstantial evidence," including "substantial similarity" in ideas).

### (a)    Titlecraft Had Access.

In addition to Titlecraft's admission that its trophies "mimic" the Vince Lombardi Trophy, it sought an opinion of counsel regarding the similarity of its "proposed" fantasy football trophies and the Vince Lombardi Trophy. (Connolly Decl. Ex. E.) This opinion letter included the image of the Vince Lombardi Trophy depicted in the NFL's trademark registration. (*Id.*; *see also id.* Ex. I (NFL's Trademark Registration for Vince Lombardi Trophy.) Access simply cannot be disputed.

Even absent these admissions, Titlecraft's access can be established objectively. "Access is established by showing that a defendant had an 'opportunity to view or to copy' the work." *Hoch*, 284 F. Supp. 2d at 1220 (quoting *Moore v. Columbia Pictures, Indus., Inc.*, 972 F.2d 939, 942 (8th Cir. 1992)). Whether there is such an "opportunity" may turn on whether there is a

"reasonable possibility" that the infringer saw the copyrighted work. *Id.* (citing *Janel Russell Designs, Inc. v. Mendelson & Assocs., Inc.*, 114 F. Supp. 2d 856, 864 (D. Minn. 2000)).

Titlecraft is in the football trophy business. No reasonable juror could conclude that no one from Titlecraft—at any point in the last 40 years—ever saw one of the Super Bowl championship games and a triumphant football player hoisting the Vince Lombardi Trophy. Given its business, there is at least a "reasonable possibility" that Titlecraft had seen the Vince Lombardi Trophy in that or other contexts. Moreover, where, as here, "[t]he similarity between the original and the copy is so striking as to preclude any possibility of independent creation, access may be inferred." *Moore*, 972 F.2d at 941 n.1 (citation omitted); *Thimbleberries, Inc. v. C&F Enterprises, Inc.*, 142 F. Supp. 2d 1132, 1139 (D. Minn. 2001) (where plaintiff failed to establish dissemination of its work access found based on the striking similarities between the works).

Given these admissions and circumstances, there can be no genuine dispute regarding Titlecraft's access to the Vince Lombardi Trophy.

### 3. Titlecraft's Fantasy Football Trophies And The Vince Lombardi Trophy Are Substantially Similar.

Substantial similarity is determined by a two-step analysis: The Court first applies an objective, extrinsic test to ask whether "the general idea" of the two works is substantially similar in protectible expression. *Taylor*, 315 F.3d at 1043.

If the answer is "yes," then the Court conducts an intrinsic analysis to determine whether the two works have the same total concept and feel.  *Id.*  Even a cursory comparison of the Titlecraft fantasy football trophies and the Vince Lombardi Trophy shows that both tests are satisfied.

Under the extrinsic test, the Court analyzes "the similarity of ideas extrinsically, focusing on "objective similarities in the details of the works." *Hartman*, 833 F.2d at 120; *Bar- Meir*, 176 F. Supp. 2d at 947.  The relevant criteria include "the type of artwork involved, the materials used, the subject matter, and the setting for the subject."  *Nelson*, 873 F.2d at 1143 (internal citation omitted).  Where the works have "numerous objective criteria" in common, the extrinsic test is satisfied.  *See Janel Russell Designs*, 114 F. Supp. 2d at 865.

The Vince Lombardi Trophy comprises multiple original elements of creative expression, including, among others: (1) the positioning of a football atop a base with certain proportions and sizes of the football relative to the base; (2) the absence of any other figures or adornments; (3) the smooth football surface (as opposed to the pebbled texture of a real leather football); (4) the acute downward angle of the football relative to the front side of the base; (5) the upward positioning of the football laces; (6) the increasing width of the base, from top to bottom; and (7) the angled, as opposed to rounded, corners of the base which are formed by the coupling of planar members.  Titlecraft's fantasy football trophies

11

incorporate *each and every one* of these elements of expression.  (*Compare* Figure 1 with Figure 2.)

In addition to incorporating each individual design element of the Vince Lombardi Trophy, Titlecraft's fantasy football trophies mimic the original combination, arrangement, and proportions of those design elements.  Thus, even assuming, for the sake of argument, that some of the elements of the Vince Lombardi Trophy are individually unprotectible,[4] the combination of the elements is protectible.  Indeed, in a similar case involving two trophies, the Second Circuit held the knockoff to be infringing, even though the trophies were "not identical" and the individual elements of the plaintiff's trophy were unprotectible.  *See Crown Awards, Inc. v. Discount Trophy & Co., Inc.*, 326 Fed. Appx. 575, 579-80 (2d Cir. 2009) ("Although Crown's [trophy] design consists of 'a compilation of unprotectible elements' – i.e., stars, spinners, a diamond shape, etc. – its copyright protects 'the original way in which [it] has 'selected, coordinated, and arranged' the elements of [its] work.'") (quoting *Knitwaves, Inc. v. Lollytogs, Ltd.*, 71 F.3d 996, 1003-04 (2d Cir. 1995)).

The limitless range of creative expression available to design a football trophy also weighs in favor of finding substantial similarity under the extrinsic

---

[4]  Under the extrinsic test, courts "'filter out and disregard the non-protectible elements.'"  *Hoch*, 284 F. Supp. 2d at 1222 (citation omitted).

12

analysis.[5] *See Taylor*, 315 F.3d at 1043 (finding substantial similarity where there were "numerous ways of depicting [a work] involving variations of design, shape, color, dimensionality, and lettering, as well as decorative minutiae"). Titlecraft had many options in designing its fantasy football trophies. It did not need to copy both the individual elements as well as the original combination and arrangement of elements of the Vince Lombardi Trophy.[6] Nonetheless, copying of both the elements of the Vince Lombard Trophy as well as their combination and arrangement is obvious. (*See* Connolly Decl. Ex. B.) Simply put, the extrinsic test is fully satisfied. There are "objective similarities" in the elements of expression of Titlecraft fantasy football trophies and the Vince Lombardi Trophy. *See Schoolhouse*, 275 F.3d at 729.

---

[5] Many football trophies do not comprise a football sitting atop a base, *e.g.*, the Heisman Trophy, *see* Connolly Decl. Ex. K (image of Heisman Trophy), and do not in any way resemble the Vince Lombardi Trophy. *See id.* (examples of various designs of trophies without a football on a base). Even if the football-on-base design were desired, however, there are many ways to arrange a football atop a base that do not copy the Vince Lombardi Trophy design. *Id.* (examples of various football-on-base trophy designs).

[6] Similarly, although it had many ways to design its fantasy baseball trophy, Titlecraft copied the individual elements and the original combination and arrangement of elements found in the trophy presented to Major League Baseball's World Series winner. *Compare* Titlecraft's fantasy baseball trophies (Connolly Decl. Ex. L) *with* a photo of the 1991 World Series trophy presented to the Minnesota Twins (Connolly Decl. Ex. M). Both have a baseball surrounded by spires or rods arranged in a circular formation.

Applying the intrinsic test, Titlecraft's fantasy football trophies also are substantially similar to the Vince Lombardi Trophy.  In this step, the Court asks "whether an ordinary, reasonable person would find the 'total concept and feel of the works' to be substantially similar."  *Hoch*, 284 F. Supp. 2d at 1224; s*ee also Hartman*, 833 F.2d at 120-21 (look at "total concept and feel"); *Bar-Meir*, 176 F. Supp. 2d at 947 ("response of the ordinary, reasonable person to the forms of expression").  "[I]t is improper to perform analytic dissection, or 'filtering,' when conducting the 'intrinsic' step" because the proper question is whether "the works, taken as a whole, [are] substantially similar."  *Taylor Corp. v. Four Seasons Greetings, LLC*, 403 F.3d 958, 966 (8th Cir. 2005); *see also Taylor*, 315 F.3d at 1043 (would "ordinary observer" regard "aesthetic appeal" as the same) (quoting *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960)).

No reasonable juror could disagree as to whether Titlecraft's fantasy football trophies are substantially similar in "total concept and feel" to the Vince Lombardi Trophy.  (*Compare* Figure 1 *with* Figure 2 above (Connolly Decl. Exs. A and B.)  Their similarity leads to the "overwhelming impression" that Titlecraft's fantasy football trophies "are appropriations."  *Taylor*, 403 F.3d at 966 (quoting *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 111 (2d Cir. 2001)).

Taken as a whole, they have the same "aesthetic appeal" as the Vince Lombardi Trophy.[7]

## CONCLUSION

The Vince Lombardi Trophy is an original work of authorship that Titlecraft's fantasy football trophies copy. The NFL owns a valid copyright in the Vince Lombardi Trophy and Titlecraft had access to that work. No reasonable juror could conclude that Titlecraft's fantasy football trophies are not substantially similar—if not identical in material expression—to the Vince Lombardi Trophy. Accordingly, the NFL Parties respectfully request that the Court enter judgment in their favor on Count I of the Counterclaims herein.

---

[7] That Titlecraft's trophies are made of wood, rather than the silver of the Vince Lombardi Trophy, does not alter the conclusion that the trophies are substantially similar. *See, e.g., Washington Mint, LLC*, 2001 WL 1640073, at *4 (substantial similarity found where copy was in a different medium than the original (coin infringed on sculpture); *Rogers v. Koons*, 960 F.2d 301, 312 (2d Cir. 1992) (sculpture infringed photo). Nor do any other minor differences—such as the trim on the bases of Titlecraft's trophies—alter the conclusion that the trophies are substantially similar. *See Thimbleberries*, 142 F. Supp. 2d at 1140 (substantial similarity found notwithstanding "subtle distinctions").

Dated: October 15, 2010　　　　　　　　　Respectfully submitted,


　　　　　　　　　　　　　　　　　　　　 s/ Daniel J. Connolly
　　　　　　　　　　　　　　　　　　　　Daniel J. Connolly, #197427
　　　　　　　　　　　　　　　　　　　　Timothy J. Cruz, #0386626
　　　　　　　　　　　　　　　　　　　　FAEGRE & BENSON
　　　　　　　　　　　　　　　　　　　　2200 Wells Fargo Center
　　　　　　　　　　　　　　　　　　　　90 South Seventh Street
　　　　　　　　　　　　　　　　　　　　Minneapolis, Minnesota 55402
　　　　　　　　　　　　　　　　　　　　(612) 766-7000

　　　　　　　　　　　　　　　　　　　　Bruce P. Keller (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　Michael J. Beam (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　DEBEVOISE & PLIMPTON LLP
　　　　　　　　　　　　　　　　　　　　919 Third Avenue
　　　　　　　　　　　　　　　　　　　　New York, New York 10022
　　　　　　　　　　　　　　　　　　　　(212) 909-6000

　　　　　　　　　　　　　　　　　　　　*Counsel for Defendants and Counterclaim-Plaintiffs National Football League and NFL Properties, LLC*